My name is John Egbert. I represent the Salt River Project, or SRP, one of the plaintiffs in this litigation. I intend to reserve a few minutes of my time at the end for rebuttal. Your Honors, this appeal arises out of the Navajo Nation's attempt to subject non-Indian to its regulatory and adjudicatory jurisdiction, a subject which this Court and the United States Supreme Court have addressed numerous times over the last 15 years. That's not where we are now. That's not where we are now, and that's my point, Your Honor. We, the district court, did not address that issue, didn't reach it, didn't reach the merits of that case, and we're not directly concluding that SRP, the plaintiffs, were required to submit its claims to the Secretary of the Interior, rather than in litigation. Now, in Aspha's case, how do you, do you know how to pronounce it? Aspas. Aspas? That's how I pronounce it. Aspas. So a case arose of similar posture, and we ducked the question of the inherent authority of the Navajo Nation and just said, we'll take a look at the lease and see whether there was a waiver in the lease. Correct. And so the district court says, well, I'm going to do the same thing. I'll look at the waiver in the lease. But under the dispute resolution provisions, it has to go to the Secretary. So go off to the Secretary. Why was that wrong? Why couldn't it just follow that same pathway, since you did raise both issues? Because, Your Honor, we, it, in essence, negates a big part of the claims that we are asserting that rely on the rights of the Section 323 grant cannot be presented to the Secretary. Those are claims under the language of the Section 323 grant that say when a, an individual operating under Navajo Nation authority, under color of Navajo Nation authority, interferes with those rights, you, you can't go to the Secretary until after you've filed litigation and you've been thwarted in that litigation. But as an as-past, if, if the court found or the Secretary found or the court found that, that there was, that the Navajo Nation had waived their right to enforce the employment NPEA, then your other claim would be removed because you've already gotten what you wanted. So, so why couldn't the court take that pathway? Because the court didn't, didn't decide that. The court didn't reach the merits and didn't say that we are, in fact, that, that there has been an unmistakable waiver and, therefore, you know, you win. Under those circumstances, true, they could, then we would have won and we wouldn't have had to go to the Secretary. It, but he's saying that whether there was a waiver has to be decided by the Secretary under the lease. I have a question about that, but that was the, the, the structure of the thing. He's saying that, that is sort of, although you're, you say it's your backup argument, he's essentially saying it's logically prior. Well, we, we, we, whether it's prior or not, it's clear that it's not the only argument. The argument that the other side is making is that we're exclusively relying on the lease and not, and that the rights under the Section 323 grant are irrelevant to our claims. Well, what are the, let me back up one minute. I have one somewhat supervening question which doesn't seem to have been discussed in the briefs at all. The dispute resolution provision under the lease, in, in both instances you put little dot, dot, dots, and it is my rule that whenever there's dot, dot, dots in a quote, it matters. All right. So the dot, dot, dots throughout both briefs deal with the language of default. In other words, the provision doesn't say whenever there's a dispute. It says whenever there's a dispute which is certainly comprises or involves any default or event which could ripen into a default, and all the way through the rest of the provision, there's a concern with default and avoiding a default and essentially avoiding a termination of the lease as a result of a default. Now, does that matter? I mean, is, is, is this narrower than just any old dispute about the lease? Is there, is there, is this a dispute which is certainly or a violation which certainly comprises or involves any default or event which could ripen into a default? Your Honor, we, our position is that our claims, certainly the claims related to the Section 323 grant, but even the claims that we're asserting against the individual Tribal officials do not fit within the parameters of this dispute resolution  I'm not asking you that. I was not asking you that. I was asking you that as to what, as to the aspect of this dispute that does involve the lease, does it fit within the language of the dispute resolution provision of the lease, given the fact that that is not related to any dispute, but a dispute which assertively comprises or involves any default or event which could ripen into a default? Well, to the extent that is, that is what the lease provides, there is no default here, and therefore Are you claiming there's a default? No. We're not claiming that there's been a So you're not seeking to terminate the lease even in, all the way down the line? No, we are not seeking to, what we're seeking to do is continue on and have our right not to be regulated. But isn't that the, to the extent that's a lease obligation, that you're, you're going to point to Section 16 in the lease, to the extent that's a lease obligation, that the Navajo Nation's individuals' regulation under the MPA of your operations, doesn't, isn't that a breach of that provision of the lease? Well, Your Honor, it's, it's not, it's not just a lease obligation that, that says they're not going to regulate. It may be that, but it's also under the, the straight versus Yeah, and I understand that, that's your second, or your primary, whatever. Let me, if I could just ask you about that for, for one moment. Sure. It was something I was confused about in your briefs. You're, are you arguing that that, what I would say is the inherent authority, that does the Navajo Nation have the inherent authority to impose the MPA on your operations? Are you saying that arises out of the grant, or are you just relying on the grant to say you have, your, your interests in the property are analogous to straight and that Bighorn Electric Co-op? Or are you saying that there was a breach of the grant, or there's some dispute relating to the grant? We're, we're saying that, that because the grant gives us the right of quiet enjoyment and exclusive possession, and negates all of the, the Navajo uses of that land, then we are in fact like straight and Bighorn and all the other cases. Well, where does the second part come from? It says the, the provision with regard to the 323 dispute resolution, which is a one-way ratchet, by the way, and, and in other words, it, it only deals with your raising disputes if, if, if, and presumably because of sovereign immunity concerns. But that's because we're not, we're the only party. The Navajo Nation is not a party to that grant. It's the U, United States government grant that it does. In any event, but there is another dispute resolution provision which parallels the one in the lease, which runs the other way. No. The other is one, but leave that alone for now. So it says the possession of quiet enjoyment of the granted lands or other rights accorded to the grantees are in, so why are you saying the possession or quiet enjoyment of the land, so you're not relying on the other rights, you're relying on the possession or quiet enjoyment? No. We're, we're relying on the bundle of rights that come from the section 323 grant. All right. So what are, this is what I think Judge Acuna was asking you, what right under the lease, under the grant are you relying on? You're not saying there's a dispute under the grant, right? You're, you're just talking about the rights, your interest in property and the, the rights you have as a rightful wayholder. Is that right? Am I understanding that right or not? No. I'm, I'm not sure that I fully understand your question, Your Honor, but let, let me make an attempt and see if I, if I'm there. We are saying that because they are trying to regulate us as though, as though this weren't treated as non-Indian fee land, that's a violation of our rights under the section 323 grant. That is a violation of the, the rights that we have, and therefore, that provision, section 10 of the grant says, when we have a tribal official that's interfering with our rights, we have to go to court. And we can only go to the Secretary after we've been thwarted by a successful assertion of tribal sovereign immunity or lack of jurisdiction, neither one of which has been argued by the, the Navajo Nation officials here. So we, we haven't been thwarted. And so But just to clarify again, you're not saying that there's anything in this grant, other than the fact that you are given a, a grant of land that gives you any right in this regard. So it goes back to the underlying case law and not to anything in this grant. No, I, I disagree, Your Honor, because I think the underlying case law tells us what the grant means. The under, what, what Strait and Bighorn say is that when you, when you have this, when the government has given you all of these rights to this land, what it means is that you're effectively non-Indian fee land for purposes of non-member or non-Indian governance. I would say section 10 was not in the grant, but you still were given the right of ways in all the, the, the use of the property that was analogous to Strait and, and Bighorn electric power. Would you still be able to say, Navajo Nation, under this case, Montana, Navajo Nation cannot impose MPA on our operations, or would you then not have that claim? Yes, we would still have that claim. And the reason we would still have that claim is because section 10 simply tells us the, the limited narrow circumstances under which we can not only go to court to, to defend those rights, but also then get the Secretary to help us. And, and really all of, both the, the, the dispute resolution procedure in the lease and in the grant are really designed around sovereign immunity. The reason that's, that doesn't work, because the one in the lease is bilateral. In other words, it doesn't matter whether you're suing them or they're suing you. That's correct. So you don't have a sovereign immunity problem, so it can't be based on sovereign immunity. No, but, but, Your Honor, the reason, our position is that the reason why the, the this novel idea of, of having disputes between these two parties be submitted to the Secretary of the Interior is a recognition of the tribe's clear sovereign immunity. But the grant deals with it in a different way, which is making, saying go to court first, and if you run into a sovereign immunity problem, then come. But that's only when we're dealing with the Navajo tribal officials, not the. Not necessarily, not necessarily, because it could be against the tribe as well. But it says, if under color of Navajo tribal authority, the possession of, or required enjoyment of the land or other rights according to the grant piece. You did, in fact, sue the tribe as well as the, the officials, didn't you? We did not in this litigation. Let's, let's assume that, that it just recurs, or that we're proceeding under the lease, or a dispute of the lease about the waiver. And you submitted a letter, a couple of letters to the Secretary, and the Secretary writes back and says, I'm not going to hear this case. Why isn't that enough under the lease? And what about the language in the at least dispute resolution provision that says you should proceed under the APA? The, in, in the letters from the Secretary, the Secretary is in essence saying we're not going to, we're not going to make a decision. We're, we think you need to be in litigation. That's the right place to be. No, he said you are in litigation, so we're not going to do it. He didn't say we think you ought to be, they said you are. He says, they did indicate that now that you're in litigation, that that's the right place for you guys to resolve your disputes. We're not going to get involved. We didn't even say that. They just sort of said we're not going to get in the middle of some litigation that's already there. Yes. We believe the most appropriate course of action is for SRP and the nation to resolve their differences through the litigation. So the, we, we don't think this is a situation where they've, they've reached a decision to, to even challenge and it's just a refusal to, to be a decision maker. They did offer to be, to act in the role as mediator on a voluntary basis, but not to make a decision one way or the other, instead deferring to the litigation. Okay, if, if there were no section 16 in the lease, so there is nothing like an ask pass that, that you could read as a waiver. Would you still have a cause of action under the Montana argument? Absolutely. We would. Because the, the, the, you still go to the arguments about whether there's inherent tribal authority to start with, before you ever get to the issue that asked us, decided, and that indeed asked us, said, we're not going to address the issue. We're going to go straight. At that time, it was easier to address the waiver argument. But since asked us, was decided, there's been any number of, of Supreme Court decisions that have elaborated and clarified the scope of Montana. And now it's much clearer that there is no inherent authority under these circumstances. Can I back up for a minute? Sure. It's a little mysterious to me. What, what it means to have a lease and a grant of the same property. Which is what it appears to me you're saying. Is that, is that where we are? You have a, you're leasing the property and you also have a grant of the property. Yes, Your Honor. What does that mean? It means that what, when, when SRP and the other participants are, are about to invest over a billion dollars into building a power plant on reservation lands, they want to make sure they have some security, some, some protection. And so the, the grant itself is from the United States as trustee over this reservation land. Why do you need a lease? Pardon me? What are you paying for? What's the lease? Well, the, the lease is the deal with the, directly with the Navajo Nation. I understand that, but if you already have the land, why do you need a lease? Because it gives us additional protection. And in fact, the, the, the grant says specifically that it's intended to induce us into doing the project. And, and in fact, it does that because it gives us protection. But, but is there totally redundant? I mean, are they, are they redundant with regard to the same property? They, they involve the same property, Your Honor, but they are not redundant in terms of rights that derive from them. But aren't you washing out the lease as having any role at this point? Not, not at all. In fact, we, we did attempt with respect to our claims against the Navajo Nation arising out of the lease. We did attempt to address those with the Secretary. And, but with respect to our claims against the Navajo tribal officials arising out of the Section 323 grant rights, we have a right to be in litigation, and the court wrongfully said we, we can't be there, that we need to send those to the Secretary as well. So you want the district court, so you had two arguments, one on the lease, which potentially was covered by the dispute waiver provision in the lease. The other one that was based on your rights in the right way in, in the 323 grant. And what would you want for the district court to address the Montana argument based on your rights in the land? Is that, is that right? At this point, we, we want the court to address both of those arguments, because the Secretary has said that he's not going to address it. Okay. Okay. Thank you very much. Thank you. We'll give you a couple minutes in rebuttal. Thank you. Thank you. Good morning, Your Honor. It's my pleasure to please the Court. I'm Philip Higdon. I represent the Justices of the Navajo Nation Supreme Court, the Director of the Office of Navajo Labor Relations, and the members of the Navajo Nation Labor Commission. With me is Mr. David Jordan, who represents the two Navajo individuals whose employments were terminated by SRP and its contractor. He's asked me to reserve about five minutes of time for his remarks, and so I'll attempt to do that with the indulgence of the Court. Your Honor, the, the arguments that SRP has made in its brief and that you heard today present an interesting hypothetical case that may be of interest for discussion purposes, but they are not the case that SRP brought to the District Court. Recall that SRP did not file suit in this case until after it had asked the Secretary of the Interior to resolve this dispute, after it asked the Navajo Nation Labor Commission to stay its proceedings on the Thin and Ghani complaints, and after the Navajo Nation Labor Commission declined to enter that stay. It was at that point that SRP brought its complaint, and its complaint asked for two claims for relief. The wherefore clauses on page 15 of the complaint, which ask for two things from the District Court. One is for a declaratory judgment that during the term of the 1969 lease, the defendants may not lawfully apply the Navajo Preference of Employment Act, and the other is that they may not regulate employment at the Navajo Generating Station, except as provided in the 1969 lease. And the second thing they asked for was for a preliminary injunction and permanent injunction prohibiting during the term of the 1969 lease, and except as provided in the 1969 lease, certain activities from taking place. Nowhere in the relief that is asked of the District Court is there any reference to the Section 323 grant. If you look at the ---- But do they need to, though? I mean, because they say they don't they're asking for an injunction not to apply the NPEA against the SRP. So they have one claim based on the lease and one claim just generally, and the 323 grant just is sort of the underlying rights and property under Montana that would say we have the same rights and property as the parties did in Montana, and therefore the Navajo Nation exceeds its authority in imposing the NPEA on us. Well, first of all, Your Honor, again, I think you need to look at exactly what it is they asked the Court to do and what the basis for that was. In their first claim for relief and in the second claim for relief, there is no reference whatsoever to the Section 323 grant. But do they have to is my question. I don't understand why they have to, because they're not saying this is a dispute about the grant. They're saying you, Navajo Nation, do not have the inherent authority to impose the NPEA on our operations. And then you would say, well, you don't fit in to being the non-fee member land, and they say, yes, we have the 323 grant. So why do they have to argue the 323 grant in their complaint? Because I think they have to articulate this is the right that we're seeking to protect, and this is what we're asking the Court to do to protect that right. The only reference they make in the Section 3 to the Section 323 grant at all in the complaint are two things. First, they have several allegations that no one disputes that the Navajo Nation approved those, that grant. And secondly, they quote, to some degree, from the grant. But they don't then set that up and say, all right, this is what we're complaining about. Well, I'm looking at the second claim for relief. This is on ER-366. And they say, unless enjoined, the defendants are going to proceed against SRP in the operation of the NGS beyond defendant's jurisdiction, without basis in law, in violation of Federal law. NNSC has no authority to order the NNLC to proceed on this matter. I mean, that's essentially the argument of Montana. You don't have the authority to proceed against us in this way on these employment issues. So it seems like they're specifically asking the Court to rule on that argument. The only time the grant allows SRP, the grant allows SRP to go to court is if under color of Navajo tribal authority, the possession or quiet enjoyment of the granted lands or other rights accorded by the grantees are interfered with. There is no allegation here, other than the broad assumption this may someday come down the road, that there has been or will be any interference with the quiet possession of the land by SRP. Isn't this somewhat by the board or not worth our time in the sense that if we were to rule on this basis, we would have to give them leave to amend, and they would then amend, and we'd be back in the same place? No, because the logical result of all this is, this is a dispute under the lease. Well, let me ask you, I asked them, and I'm asking you, about the dot, dot, dots. Why does this dispute resolution apply? I understand or I guess another way of putting it is breach and default the same thing. They are obviously claiming with regard to the lease that you breached it, but are they claiming that you're in default? I think we both put in those dot, dot, dots, because both sides recognize that that particular language is not relevant. Why? Because, number one, it's a disjunctive, not a conjunctive, and it talks about I don't see that, I don't see that. Well, because of the words or where they appear. Where do they appear? Tell me where. The reason I'm asking this question is because it seems to me that if default signals something that could lead to a termination of the lease, the one thing we know that the SRP is not seeking is a termination of the lease. So I'm wondering whether this whole thing applies. Okay. Reading the entire thing. All disagreements or disputes between the lessees or any of them and the tribe except as provided in section 25A, which we all recognize is not relevant here because that's a failure to pay rent. Hereof, arising under or in connection with the lease or concerning the validity or binding effect of the lease, including any disputes arising as to the provisions of the lease or the rights, duties, and obligations of the parties under this lease, or as to any questions of fact affecting the application of the provisions of the lease, which assertedly comprise or involves. That which assertedly comprises applies to any, everything, and you can tell that because it's in the heading and it's also all the way through the rest of the provision is they're talking about defaults. Well, no, it's defaults and determination of disputes. I think those are two topics, Your Honor, with respect. All right. So let me ask, if I disagreed with you and I thought that the default applied to everything, does that matter? I mean, I want to know whether the concept of default is sufficiently different from violation of the lease that there would have to be some different allegations than what there are here. I think unreservedly, if it required an allegation of default to bring to the fore this dispute resolution procedure, then we'd be in a very different situation. But this is a dispute between the lessees, and what is clearly intended here is that when you have a dispute between the lessees, you're supposed to take that to the Secretary of the Interior, as SRP acknowledged when they did it in the first place. But if they have one argument that says you, Navjot Nisen, I see how that dispute arises under the lease, and that's what the district court was looking at. But if you have another dispute that says, just as a matter of law, you, Navjot Nisen, can't impose the MPA on our operations, I don't understand why that doesn't involve any interpretation of the lease, it doesn't arise under the lease, it's just a separate claim. I don't understand why that is linked to these dispute resolution provisions. Well, the whole 323 grant argument really has evolved over time, Your Honor. It is not what was presented to the district court. It is something that was developed most fully in the briefing before this court. But could you entertain it? Let's just assume that it's appropriately before the district court and before us. Why isn't their Montana argument separate from their lease dispute argument, and is not limited to these lease dispute resolution provisions? Well, first of all, the SRP argument that is based on the 323 grant has a failed premise, which is that a section 323 grant automatically removes tribal land and makes it become, in effect, non-Indian land. That's substantive. You're arguing on the merits that that's a loser argument, which it may well be. But the question is, why can't the district court entertain it without having to deliver this to the dispute resolution provisions of the lease, which is a separate document? Then I still think under the terms of the 323 grant, there has to be some kind of threat by someone acting under color of Navajo Nation law that has not been alleged and has not been established here. What I don't understand is, I didn't see anything in the grant. Of course, I'm not as familiar as you all are. But I didn't see anything where they waived any other right to bring land to the district court without being limited by anything in either the grant or the lease. I mean, they're not they haven't waived any rights they might have. Well, the grant is what the grant is what provides rights to SRP. It gives them the right in the property, but it doesn't give them the right not to be, necessarily, not to be regulated by the Navajo Nation under the NPEA. I mean, they may not have that right. But even if they had some other ownership, they didn't have a grant, but they were adjacent contiguous property that they owned that was fee land owned by a nonmember, and they might want to raise this NPEA argument, why couldn't they go into court and raise that whether or not they had the grant? Maybe they lose. Maybe they lose worse without the grant. Well, they can always go to court, Your Honor. But the issue is whether there is any procedural, let alone substantive basis for I'll put the issue another way. It seems to me quite possible that neither of these provisions apply. And they're just in the same position as somebody in the Lincoln and Montana case who just couldn't go to court. Neither of these provide. Why isn't one reading is just I understand I'm fixated on this default thing. But if I read the default thing the way I do, I'm not sure this applies. And I'm not sure the grant one applies because it doesn't appear to me that this is really about anything about quiet possession under the grant. It's really about a set of other principles outside the grant and outside the lease. So why can't they just go to court? Well, because as Mr. Egbert said, SRP's rights to be there in the first place are governed by these two documents. The agreement with the Navajo Nation through the lease and the agreement gives them whatever it gives them with respect to a land interest. And that has legal consequences under the Montana line of cases. But the grant doesn't give them the legal consequences under the Montana line of cases. It just gives them and it's like saying if somebody gives you a, you know, a fee conveyance, you don't necessarily have to sue under the deed. You go to court and you say, I have a deed. And therefore, I have whatever rights I have. I'm not sure I understand the question. The question is, is this a perceived, is that kind of an argument, an argument under the grant as opposed to just an argument free of either the lease or the grant? I think both of us have operated under the assumption that they are asserting an ability to make these claims under both the lease and the grant and there's no other source from which they can make those claims. But in fact, they're not. Their source is essentially Indian law. Well, they're saying the grant. The grant means it takes a certain piece of Indian land and makes it something else. And without the grant, there is not that conversion. Now, we disagree there is such a conversion, but they have no argument without that grant. True, but that isn't the same as saying that they're arguing about the grant. Because you have no one's really arguing about the grant. I mean, the grant gives them the land. The question is what's the consequences of that? I do, if I may. Thank you. I hope I've answered your question. Thank you. May it please the Court. David Jordan for the Rio Parties in Interest, Thin and Ghani. We take a slightly different position from the Navajo Nation, although we do join  in on the exclusion clauses arguments. But it is our position that, in essence, this case was resolved by the Navajo Supreme Court, and there is no Federal interest in the case beyond that. To that extent, Judges, our position is somewhat aligned with some of the questions that was asked of my co-counsel, in the sense that we don't believe that the grant or the lease resolve the issue of regulation over employment practices. So if that were the case, the case would go forward in Federal court, and you would make your arguments that there's no jurisdiction, and they would make their arguments that, yeah, there is, because this is under the Montana line of cases, and you really didn't have the authority, and we would all learn something. Well, it's our position under Montana that this is clearly resolved. We filed our own motion for summary judgment, which was pending at the same time. We believe that in an alternate way to affirm the district court is on our motion for summary judgment, which in essence says tribe has the right to regulate employment. There is, under Montana, there's a consensual relationship. But as to the issue that the appeals are mainly about, then, your position is the issue should be resolved in court, including whether the court has jurisdiction. But nobody should be running off to the Secretary, essentially, is what you're saying. We have never taken that position. We don't contest the tribal official's position in that case, but that's not our position. Our position in this case is that the tribe has a right to regulate, and that there is no Federal interest in that issue. And the reason there's no Federal interest, the only possible Federal interest is the Montana argument, which is simply resolved by the fact that there's a consensual relationship in the lease, and the lease specifically requires them to hire Navos, so that there is a nexus between the lease and an employment regulation. And so with a consensual relationship and nothing in the lease that takes away the regulatory power, then at that point there is no further Federal interest. That's all the merits of the Montana argument, because you're really saying there's exceptions under Montana for consensual relationships. There was a consensual relationship in the lease, so it's the lease that governs substantively, and we should all be dealing with this in court. Correct. Correct. And further, it has already been resolved, because the rest of the issues are Navajo issues. The issue of interpreting the contract, interpreting this operation clause in the waiver, is decided by the location of where the contract is to be performed. And that's quite true if you look at it under Federal law or Navajo law. And under Federal law or Navajo law, when you apply the law where the contract is to be formed, Navajo law, the Supreme Court of the Navajo Nation is the supreme arbiter of the question of what is Navajo contract law. They interpreted the operation clause to say this is not an unmistakable waiver of tribal sovereignty, and it must be. And so we do not interpret the statement, we will not regulate the operation of your power plant to include employment practices. That's not a Federal issue. That's a Navajo contract law principle. And then the second issue, Your Honors, is the question is, did the council have the power to enact this in the first place, which was an issue that ASPIS specifically suggested but never decided. Who has the decisional power to find the scope of the power of the Navajo Nation council? It's the Navajo Nation Supreme Court. I'm not clear on that understanding. Does the council have the authority to do what? To enact this lease. There's this lease. And the Supreme Court, the Navajo Supreme Court, under Navajo fundamental law doctrine said the council did not have the power to waive our regulation over employment. So even if it was interpreted as a waiver, the council didn't have the power to do that under Navajo law. Navajo fundamental law. In fact, they even expressed it in the Navajo language, as we put in our brief, helpfully with the translation. I'm not sure, Your Honors, what Navajo. But then you have a bigger substantive problem because then you're probably not within the Montana exception. But in any event, that's all substantive issues, essentially. Our position to the date has been on the substance of this. We believe that as an alternate manner of affirming the district court, the substance of their case must be dismissed because there's no Federal interest on the key aspects of the dispute and they were already resolved by the Navajo Supreme Court. Okay. Thank you very much. Can I ask one question? Is your understanding of the lease, if it applies, that it's an abstention-like matter or the whole thing gets dismissed and sent off to the Secretary? It's dismissed. He was dismissed. If we thought the lease applied, is that appropriate or would the district court hold on to it because there's another issue? There's another issue which may or may not, which is kind of a background issue that doesn't deal with the lease. Your Honor, our position is that even if the lease dispute resolution procedure applies to a portion of our claims, there's still a portion that we can't take to the Secretary even if we wanted to. But it may be logically prior, so it might make sense for the district court to essentially stay the rest of it. Yes. To stay in other words. But I think the district court can address both those issues. There's no reason why it couldn't, but I think that because the Secretary has already indicated that we're going to defer to the district court. Now, Your Honors, I want to just conclude by making one, I think, very significant point. Again, assuming that both of these provisions apply, Your Honor, because I know that that's an issue that you're considering, but even if they apply, counsel indicated that the only way we can go to court is by X. I think what these two provisions actually say is the opposite. The only way we can go to the extraordinary route of going to the Secretary is under these narrowly defined circumstances that are in the lease and in the Section 323 grant. All other circumstances, it's the normal procedure. We go to court. We don't fall within those narrowly defined circumstances. Well, you may in part. We may in part, but certainly with respect to the others. And our position is we disagree that we do in part. But even if we do, there's still a big, and they refuse to acknowledge that we've made the arguments throughout the district court and in our complaint, and we've spent a lot of time in our briefs. Well, a little less than clear on the complaint, but it's maybe good enough. Okay. But we certainly have argued it ten ways a Sunday in the district court and in the district court and throughout. And so it is an issue. And our position is that what's said in the lease and in the grant with respect to dispute resolution procedures is that only if you fit within those narrow circumstances can you go to the Secretary. Otherwise, you're in court. That's the perspective, and we're otherwise in court, and we should be in court with respect to those. Thank you, Your Honor. Thank you very much. Thank you. And those were your very helpful arguments in a very interesting and difficult case. And the case of Salt River Project v. Lee is submitted, and we are in recess until tomorrow.
judges: Goodwin, Berzon, Ikuta